**FILED**
**November 19, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0558 –        *West Virginia State Police v. Derek R. Walker*

Jenkins, Chief Justice, concurring, in part, and dissenting, in part:

I agree with that portion of the majority's opinion reversing the circuit court's order in this case insofar as the circuit court improperly substituted its findings of fact for those of the hearing examiner who was the fact finder in the first instance and to whom the circuit court should have deferred.  Accordingly, I concur with the majority's opinion to the extent it reverses the circuit court's order and remands the case for the reinstatement of the hearing examiner's decision on this basis.

However, I disagree with the remainder of the majority's opinion that reversed the circuit court's order as it pertains to the hearing examiner's excessive force analysis.  In this regard, I believe the circuit court correctly determined that the hearing examiner's legal analysis of objective reasonableness in the excessive force context was deficient because the hearing examiner failed to consider all of the factors instructing such an analysis.  Accordingly, I respectfully dissent from this portion of the majority's opinion.

The standard of review that informs both the circuit court's and this Court's review of an administrative decision is clear: the hearing examiner's findings of fact are entitled to deference, while the hearing examiner's conclusions of law are accorded a

1

plenary review. *See* W. Va. Code § 29A-5-4(g) (eff. 2021) ("The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority or jurisdiction of the agency; (3) Made upon unlawful procedures; (4) Affected by other error of law; (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."). *See also* Syl. pt. 1, in part, *Cahill v. Mercer Cty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000) ("Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo."). Therefore, the circuit court correctly reviewed anew the hearing examiner's legal analysis.

The central legal question before the hearing examiner was whether the West Virginia State Police ("State Police") properly terminated Trooper Walker's employment. In assessing Trooper Walker's conduct in the underlying incident, the State Police charged Trooper Walker with five acts of misconduct: (1) failure to perform assigned work or

2

comply with State Police policy (Group II offense)[1]; (2) violation of law (Group III offense)[2]; (3) use of unnecessary force (Group III offense)[3]; (4) conduct unbecoming an officer (Group III offense)[4]; and (5) interference with another's rights (Group III offense).[5] Group II offenses are punishable by suspension or reprimand, [6] whereas Group III offenses are punishable by suspension without pay or discharge, or demotion or suspension if mitigating circumstances are present.[7] The common thread running through all of the charged Group III offenses, though, is whether Trooper Walker used excessive force in effectuating J.H.'s arrest. Thus, while the State Police could terminate Trooper Walker's employment if he was found to have committed just one Group III offense, each of these Group III offenses is proven by showing that Trooper Walker used excessive force during the incident in question.

Despite the importance of conducting an excessive force analysis and the existence of long-established judicial decisions, by both the United States Supreme Court

---

[1]W. Va. C.S.R. § 81-10-11.3.2.1 (eff. 2008).

[2]W. Va. C.S.R. § 81-10-11.3.3.19.

[3]W. Va. C.S.R. § 81-10-11.3.3.28.

[4]W. Va. C.S.R. § 81-10-11.3.3.33.

[5]W. Va. C.S.R. § 81-10-11.3.3.34.

[6]W. Va. C.S.R. § 81-10-11.4.2 (eff. 2008).

[7]W. Va. C.S.R. § 81-10-11.4.3.

and this Court, to guide such an analysis, the hearing examiner relied exclusively on State Police policy to determine whether Trooper Walker had employed excessive force. Such an analysis was inadequate, though, because it did not consider many of the crucial components of the objectively reasonable test adopted by the United States Supreme Court, and, in turn, by this Court, to inform a determination of whether excessive force has been used.

To determine whether the force used by a law enforcement officer in a given case is excessive, the determinative inquiry is whether such force was objectively reasonable.

> The proper application of the objective reasonableness standard in an excessive force case "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*[ *v. Connor*]*,* 490 U.S.[ 386,] at 396, 109 S. Ct. 1865[, 1872, 104 L. Ed. 2d 443 (1989) (citation omitted)]. The United States Supreme Court recently offered a more extensive list of things to consider when weighing the objective reasonableness of an officer's actions, emphasizing that the list was not exclusive:
>
>> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. We do not consider this list to be

4

exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

*Kingsley*[ v. *Hendrickson*], [576 U.S. 389, 397,] 135 S. Ct.[ 2466,] at 2473[, 192 L. Ed. 2d 416 (2015)] (citation omitted).

*Maston v. Wagner*, 236 W. Va. 488, 504, 781 S.E.2d 936, 952 (2015).

The State Police relied upon its internal policy in deciding to terminate Trooper Walker's employment, and the hearing examiner, in turn, also referred to such policy in upholding the termination decision. This policy defines "objectively reasonable response" to mean

> the action taken by a member that is reasonable in light of the facts and circumstances confronting that member. These circumstances include, but are not limited to: 1) the severity of the crime at issue; 2) whether the suspect poses an immediate threat to the safety of the member or others; and 3) whether the subject is actively resisting arrest or attempting to evade arrest by flight.

W. Va. St. Police Pol'y & P. 10-1.13 (eff. 2005; rev. 2018). Thus, the State Police policy mirrors the *Graham* standard and encompasses the same considerations of objective reasonableness.

Although the inquiry proposed by both of these authorities is identical, the hearing examiner nevertheless failed to consider the nature of the crimes that J.H. allegedly had committed or the severity of such crimes. The underlying incident began when J.H. drove his vehicle into a law enforcement officer's vehicle, in which the officer was sitting

5

at the time of impact; escalated when J.H. fled from law enforcement in his vehicle while driving at high rates of speed into oncoming traffic; and culminated when J.H. crashed his vehicle and refused to comply with Trooper Walker's commands to exit his vehicle. In light of this progression of facts, consideration of both the criminal offenses involved and the severity thereof was an integral factor in determining whether Trooper Walker's actions were objectively reasonable under the circumstances to resolve the ultimate query of whether he had used excessive force in subduing and arresting J.H., and, thus, was subject to termination. Because this part of the objectively reasonable test is glaringly absent from the hearing examiner's excessive force analysis, the circuit court correctly reversed the hearing examiner's decision on this basis. As such, the circuit court's order should have been affirmed, in part, as to the hearing examiner's deficient legal analysis, and this case should have been remanded to the hearing examiner with instructions to conduct a complete excessive force analysis based upon its findings of fact. Because the majority's opinion, instead, reverses the circuit court's order *in toto*, I respectfully dissent from this portion of the majority's opinion.

Accordingly, for these reasons, I respectfully concur, in part, and dissent, in part. I am authorized to state that Justice Armstead joins in this separate opinion.